ABRAHAM CHASE *v.* BENJAMIN DIX.

[IN CHANCERY.]

*Construction of Reservation of Water.    Sixteenth Rule in
Chancery.*

W. owned two pieces of land.   On one (the defendant's premises) there was a well, or
  spring, whence water was taken in lead pipe to a barn on the other (W's homestead);
  thence it was taken to a house on another piece (the orator's premises) which W. had
  recently sold and conveyed to K. & H.; and thence, back to a house on the first-mentioned
  piece.   A pipe branched from the main pipe on the first-mentioned piece, which conveyed

a small quantity of water to a barn thereon ; but water had never been used at said barn to any great extent, and only during small portions of the year. Under these circumstances, W. sold and conveyed said first-mentioned piece, " Reserving only the right now occupied by me, of drawing the water from the well on said land, and of digging to repair or relay water-pipes from said well,—it being mutually agreed and understood, that the water shall never be ιverted from its present channel, but shall first pass to the barn of said W. on his homestead, and thence to the dwelling of K. & H., and thence across the road, to the dwelling on the lot above deeded, where the surplus water shall be freely suffered to run." *H·ld*, that W. thereby reserved the right to draw through said aqueduct, at the barn on his homestead, *all* the water flowing from said well, where he had the right to use as much of the water as he was then using and accustomed to use ; that what remained was to pass to the premises of K. & H., where as much could be used as was there used and accustomed to be used ; and that the rest was to pass as surplus water, to the house on the premises then conveyed ; and that the defendant had no right to the water until it became *surplus water*, by remaining after having supplied and passed the barn on W's homestead and the premises of K. & H., as they were supplied at the date of the conveyance.

The true construction of the 16th rule in chancery is, that each party before he commences taking the testimony on *his side*, shall furnish the other party a full list of the names of the witnesses whose testimony he intends to·take.

APPEAL from the court of chancery. The bill alleged,

" That Lyman H. Whitney, on the 22d of November, 1858, and for a long time previous thereto, had been seised to him and his heirs, of three pieces or parcels of land, situate in Whitingham, and known as lots numbered one, two, and three ; that lot number one contained about four acres of land, on which there was a valuable spring or well of water, situate in the northwesterly corner thereof, and above all the dwelling-houses and barns situated on said three lots ; that from said well or spring, water was conducted through lead pipe laid in a ditch dug to receive the same, across lot number one, and above the dwelling-house standing thereon, to the barn on lot number two, which was the barn on the homestead of the said Whitney ; that from said barn said pipe was continued in an easterly direction, to the dwelling-house situate on lot number three, for the purpose of supplying said house with water, and that from thence the water was carried by means of a lead pipe, back on to lot number one, to an old dwelling-house then standing on said lot, for the purpose of supplying said house with water ; that the channel was dug and the pipe furnished and laid down by said Whitney, while he was the owner and occupant of all said lots and the buildings thereon ; that on the 19th of said November, the said Whitney sold and conveyed lot number three to George E. Higby and Franklin D. Knapp ; that on said 22d day of November, the said Whitney sold and conveyed said lot number one, to Warren J. Hicks, and in his deed thereof, made the following reservation : ' Reserving only the right now occupied by me, of drawing the water from

the well on said land, and of digging to repair or relay water-pipes from said well,—it being mutually agreed and understood, that the water shall never be diverted from its present channel, but shall first pass to the barn of said Whitney on his homestead, and thence to the dwelling of Franklin Knapp and George E. Higby, and thence across the road, to the dwelling on the lot above deeded, where the surplus water shall be freely suffered to run ; ' that on the first day of December, 1859, the said Knapp sold and conveyed all of his right in said lot number three, to the said Higby ; that the said Whitney, not having conveyed by his deed to Higby and Knapp the right to said well and the aqueduct conveying water therefrom to the house on lot number three, as was mutually understood by all the parties to said deed that he should, on the 10th day of February, 1863, convey to the said Higby, the same privilege and right to said well that was reserved in said Whitney's deed to said Hicks ; that on said 10th day of February, the said Higby sold and conveyed lot number three to Nelson Joy, and in his deed thereof made the following convey-ance of said well : " Also among the privileges to said house and lot, I convey to said Joy all my privileges to the water and water-pipes which convey water to said premises, which I hold by deed or conveyance from L. H. Whitney, under date of February 10th, 1863 ;" that on the 24th day of July, 1865, the said Joy sold and conveyed the same premises to Eri W. Terrill ; that Terrill con-veyed the same to Thaddeus E. Wheeler on September 7, 1870 ; and Wheeler to the orator on March 24, 1871, who had ever since owned and occupied the same ; and that in all of said deeds from Joy down to the orator, the same privileges as to water as men-tioned in the deed from Higby to Joy, were conveyed.

The bill further set forth,

" That said Hicks, in 1859, took down and destroyed the dwel-ling-house situate on lot number one, to which place the waste water was suffered freely to run from lot number three until about the year 1863, when said Hicks wholly abandoned the use of said waste water, and moved the pipe or aqueduct leading from the orator's premises to the site of said old house, after which said waste water had not been conveyed from the orator's premises to lot number one, by any one claiming under the said Hicks ; that said Hicks, soon after his purchase of lot number one, erected a new dwelling-house thereon some three or four rods above and westerly of the site of said old dwelling-house ; that on the 28th day of March, 1870, said Hicks sold and conveyed. said lot number one to Emeline C. Dix, in his deed of which was

the following reservation : ' Meaning to reserve any and all rights which are now guaranteed to one Aldrich and one Terrill, or their successors, of and to a certain spring of water on said premises ; ' that Emeline C. Dix, on the 1st day of March, 1871, sold and conveyed said lot number one to Benjamin Dix, the defendant, in whose deed was the following reservation : ' Reserving all rights which are now guaranteed to Aldrich and Terrill places, of and to a certain spring of water on said premises ; ' and that the said Benjamin Dix had been the owner and occupier of said lot ever since his said purchase thereof ; that said Whitney, on the 11th day of February, 1868, sold and conveyed lot number two to D. M. Aldrich, it being the homestead of the said Whitney, in which deed was the following conveyance : ' Together with all the right of water reserved in the deed given to Warren J. Hicks conveying his house-lot, for the use of the barn on the above described premises ; ' that said Hicks, Terrill, and Aldrich, while severally owning said lots, entered into some sort of verbal agreement,—the said Aldrich previous thereto having taken down and destroyed the barn to which water was first to run on said Whitney's homestead, and having abandoned the use of said water at said barn site,—by virtue whereof the said Aldrich and Terrill changed the original channel from said barn on lot number two to lot number three, and on to the southerly side of lot number one, and on to the premises then owned by the said Hicks, and now owned by the defendant, by which means the water was diverted from the barn site on lot number two ; that the said Hicks, while he owned and occupied lot number one, and before he sold and conveyed the same to Emeline C. Dix, attached a lead pipe to the main pipe on lot number one, about ten rods from said spring or well, so as to divert part of said water from running in the main channel, first to the barn on said Whitney's homestead, and thence to the orator's dwelling-house ; that said pipe was so attached by the said Hicks, without any right being granted to him so to do by the said Whitney, or by any one else owning said lots numbers two and three under said Whitney ; that the defendant, on becoming the owner and possessor of lot number one, was apprised by the orator of the orator's right to said spring or well of water, and the right which the orator had to draw all the water from said spring, first to the old barn site on lot number two, and from thence to the orator's dwelling-house on lot number three ; that the orator then notified the defendant to wholly desist in drawing or diverting the water through said branch pipe from the original channel, but that the defendant did not regard such request, but continued to divert said water, and had greatly dis-

turbed the orator's right to said well, by drawing the water through said branch pipe, and dipping water therefrom with pails and buckets, and conveying the same away ; and that the defendant threatened, &c.

Prayer, that the defendant be perpetually enjoined from interfering with or molesting the orator, or any person or persons owning under him, in the full and proper right of taking and using all the water from said well, as reserved in said deed ; and that he be perpetually enjoined from doing any act or thing to prevent or hinder the water from passing by said channel, as reserved in said deed ; and further enjoined from hindering or interfering with the orator from digging to repair said acqueduct leading from said well.

The answer admitted,

That Whitney owned said parcels of land, as stated in the bill, and that the defendant owned lot number one, deriving title thereto as therein stated, and that the orator owned number three, and that Whitney's deed to Hicks contained the reservation set out in the bill ; averred that when Hicks bought of Whitney, and long before and ever since, there was and has been a valuable spring or well of water on number one, situated near its north-west corner, and on higher ground than the buildings on the several lots, which, at the date of Whitney's deed to Hicks, supplied a dwelling-house and barn on lot number one, with water, as well as the barn on number two, and the house on number three ; that when Hicks received his deed of Whitney, there was, and for more than twenty years had been, a pipe or aqueduct connected with said spring, and extending in an easterly direction therefrom to the barn on said lot, through which pipe a portion of the water of said spring had been accustomed to run for a period of more than twenty years, and was at that time running and supplying said premises with water ; admitted that the water was also then running to Whitney's barn, and the house on number three, and thence across the road to the house on number one, as stated in the bill ; but denied that it was the purpose of said deed in any way or manner to restrict or abridge the right of Hicks, his heirs and assigns, to the free and unobstructed use and enjoyment of the water of said spring, as it had been accustomed to flow in said first-mentioned pipe for said period of twenty years ; and averred that it was the true intent and meaning of said deed, that said Hicks and his assigns should have a right to draw as much water through that pipe, as had been accustomed to run and was running when Whitney sold to Hicks ; that the orator's house on number three, was on lower ground

than the barn on number two, or the house on number one, so that in order to prevent all the water from running away at this point, it was necessary to gauge the pipe at number three, or draw with a faucet, and that Whitney, while he owned all of said lots, and when he conveyed to Hicks, was accustomed to draw the supply for number three, through a faucet; asserted that what was termed in said deed, "the right now occupied by me," &c., was the right as it had been used and enjoyed by the said Whitney, and as he was then using and enjoying the same ; averred that said Hicks, Terrill, and Aldrich, while owners as alleged, made a verbal agreement whereby Aldrich, having removed his barn, and not caring to have the water run there, consented that Terrill might change the course of the pipe so that the water would run directly to his house, without running to the barn on number two, and whereby Hicks permitted Terrill to dig a new channel for the pipe across a portion of number one, solely for the accommodation of Terrill, and with the express agreement and understanding that Hicks should not be prejudiced, or any right of his to said water impaired, by this change in the location of said pipe ; and that from that time until the orator purchased number three, the water ran in the new pipe laid by Terrill, to the mutual satisfaction of all parties then interested ; that all the occupants of number three who preceded the orator, were accustomed to draw the water from a faucet, or by so plugging or gauging the pipe that a supply would be left for number one; that Hicks built a new house on number one a short distance westerly of the site of the old one, after which the said Hicks, with the knowledge and consent of the then occupants of numbers two and three, spliced on a short piece of pipe to the pipe running to said spring, and carried the water a short distance further east to the said new house, where the same had continued to run without objection, until the orator bought number three ; that neither Hicks nor the defendant had drawn any more water for the new house, than had for twenty years been accustomed to run in said old pipe to said barn.

The answer denied that Hicks ever abandoned or yielded up to any person, any right of his to so much of the water of said spring as was necessary to supply his said dwelling-house with water ; and averred that all the changes that were made in the location of said pipes, or in the manner of drawing the water for the supply of the orator's and defendant's premises, and their several grantors, were prompted by a mutual feeling of kindness and accommodation and good neighborhood ; that after the orator became the owner of number three, he denied that the defendant had any right to the water of said spring, and proceeded to deprive him of

it, by removing the faucet or plug at his house, so that all the water was drawn from the defendant, and ran to the house on number three, and had from then hitherto continued to deprive him of it; and admitted that after the orator thus deprived him of the water, he did, from necessity, go to said spring and dip water therefrom to carry to his house for domestic and culinary purposes, but denied that he used filthy pails or dippers, or that he had in any way or manner interfered with any of the orator's rights to the water of said spring, or its use and enjoyment.

The answer was traversed, and testimony taken, and the cause heard on bill, answer, traverse, and proofs, at the September term, 1873, BARRETT, Chancellor. Objection was made at the hearing to the evidence taken on the part of the defendant, on the ground that a list of the witnesses was not furnished before the examination commenced, as expressed by the 16th rule in chancery, but was refused. The court held the objection well taken, construing the rule to mean, that such list should be delivered by both parties before the examination on either side commenced, but admitted the evidence, *pro forma*, being satisfied that such refusal was based upon a construction of the rule which had been common and uniform in the county, as stated by the clerk.

The orator insisted on the objections taken to parol testimony as to what was said between the parties to the deed, Whitney to Hicks, prior to, and at the time of, the execution of said deed, as to what was negotiated, understood, and agreed between the parties as to the reservation in said deed. Saving the questions thus raised, the court, *pro forma*, and without hearing on the merits, agreeably to consent of parties, ordered the bill to be dismissed with costs. Appeal by the orator.

*Horatio N. Hix* and *H. W. Brigham*, for the orator.

The orator insists that the rights of the grantees of Whitney, to lot number one as to water, are subservient to lots number two and three, and under the same reservation, and are limited to the taking of the surplus water from the dwelling-house on lot number three to lot number one, as it was running at the time said reservation and grant were made, and claims that the defendant's right to water, is derived from the deed from Whitney to Hicks.

Whitney then had the right to restrict that lot as to taking the water from the well thereon, as he saw fit; and the reservation in said deed, was intended to secure a right to said Whitney that he had already conveyed away to Knapp & Higby as an appurtenance to lot number three. The construction which should be given to the reservation in said deed, would allow the orator to take and enjoy just what Whitney reserved in said deed, that is, all the water that would run from the spring or well to the barn on lot number two, and from thence to the dwelling-house on lot number three, where, after using a reasonable supply, the surplus water should be freely suffered to run across the road, back on to lot number one, for the purpose of supplying the same with water. It makes no difference how long the water had been drawn to the barn on lot number one. Whitney had the right when he conveyed said lot, to limit it to such extent as he saw fit, and there could have been no privileges or appurtenance connected with said lot, that could not be reserved and excepted out of the conveyance. The language of the reservation should not be construed against the grantor; for the rule is well settled, that a grantee by accepting the deed, is bound by all its restrictions, limitations, and exceptions; and so far as the question of construction is concerned, the language is considered as much the language of one party as the other. *Newell* v. *Hill*, 2 Met. 180; *Winthrop* v. *Fairbanks*, 41 Me. 307; *Bowen et al.* v. *Conner*, 6 Cush. 132; Chit. Cont. 14, n.; *Rood et al.* v. *Johnson*, 26 Vt. 64; *Cooney* v. *Hayes et al.* 40 Vt. 478; *Hill* v. *Shorey et als.* 42 Vt. 614.

It seems clearly to have been the intention of Whitney and Hicks, to limit said lot as to the use of water from said well, to the surplus water, after lots two and three had been supplied, and that said surplus water should be taken from the house on lot number three, and in no other way, for the purpose of supplying lot number one with water. The deed is absolute in its terms and unequivocal, and what is there granted and reserved, is equally explicit, and does not require the aid of any verbal testimony as to what passed between the parties to said deed, previous to, and at the time of, the execution of the same. 4 Greenl.

83

Cruise, 296, 297, n.; *Hill* v. *Shorey, supra; Newell* v. *Hill, supra; Bowen* v. *Conner, supra.*

The orator insists that he should have been furnished a list of the witnesses intended to have been examined by defendant, previous to the commencement of the examination before the master of any of the witnesses on either side, he having requested such list to be produced previous thereto, as is expressed and printed in rule 16 in chancery. Because the rule had always been construed wrong, furnishes no reason why it should not be complied with when insisted on by either of the parties. The rules of the court of chancery are as binding and imperative as the statute law of the state. 11 Vt. 691; Gen. Sts. ch. 29, § 29.

*C. N. Davenport*, for the defendant.

The legal effect of the deed from Whitney to Hicks, was, to convey everything embraced in its description and by its terms, except what was by the reservation taken from its operation. "A reservation is something taken from the whole thing covered by the general terms making the grant, which cuts down and lessens the grant from what it would be, except the reservation." When it can be ascertained what right was, at the date of that deed, occupied by Whitney, we are safe in assuming that no other or greater rights have passed through him and his grantees to the orator. The measure of the quantity of water reserved, and the means and methods of its taking and enjoyment, are to be ascertained from this deed, construed in the light of the circumstances as they existed at the time of its delivery. *Rogers et al.* v. *Bancroft et al.* 20 Vt. 250; *Adams et al.* v. *Warner et al.* 23 Vt. 395; *Rood et al.* v. *Johnson*, 26 Vt. 64; *Hill* v. *Shorey et al.* 42 Vt. 614; *Coolidge* v. *Hager*, 43 Vt. 9; *Miller* v. *Lapham*, 44 Vt. 416; *Fuller* v. *Arms*, 45 Vt. 400; Angell Watercourses, §§ 173, 174. If the construction of this deed is doubtful, we must, to ascertain its meaning, find out from the entire instrument, in view of the circumstances, what was the intent of the parties. *Gray, admr.* v. *Clark et al.* 11 Vt. 583; *Flagg, admr.* v. *Eames et al.* 40 Vt. 16; *Fuller* v. *Arms, supra; Cooney* v. *Hayes et al.* 40 Vt. 478; *Dunklee* v. *Wilton R. R. Co.* 4 Fost. (N. H.) 489; Angell

Watercourses, § 185. The case shows that the water was running at the old barn at the time Hicks purchased and took his deed. The pipe conveying it had lain in the ground and been used for that purpose for more than 20 years. Had the spring or well from which the water flowed, been located upon other lands of the grantor not embraced in the deed, the right to take the water as it was then running, would have passed to Hicks by that deed, as appurtenant to the buildings and land. *Vermont Central R. R. Co.* v. *Estate of Hills*, 23 Vt. 681; *Swazey* v. *Brooks*, 34 Vt. 451; *Coolidge* v. *Hager*, *supra*; *French et al.* v. *Freeman*, 43 Vt. 93; *Nicholas* v. *Chamberlain*, Cro. Jac. 121, quoted in *N. Ipswich Fac.* v. *Batchelder*, 3 N. H. 193; *Dunklee* v. *Wilton R. R. Co. supra*.

From the deed taken as a whole, in the light of the circumstances under which it was given, the situation of the subject-matter and the parties, and the doctrine and principles deducible from the cases above cited, I think the following propositions are well founded. 1. That the deed from Whitney to Hicks, of Nov. 22, 1858, operated to convey the spring or well to the grantee. 2. That the reservation did not operate to retain for the grantor any estate or interest in the spring itself. The right reserved is in law just what the instrument states it to be in fact— " *the right now occupied by me of drawing the water from the well,*" &c. Nothing is reserved but an easement or right to take water, and enter to repair or relay the pipe. *Mixer* v. *Reed*, 25 Vt. 254; *Clarke* v. *Estate of Conroe*, 38 Vt. 469; *Coolidge* v. *Hager*, *supra*. The right to thus take water, is the *right then occupied by Whitney*. He had by force of this reservation, the right to enjoy thereafter, the privilege of taking the same quantity of water in the same manner, and by the same means and methods, in use at the date of the deed. The right to thus take water was personal to Whitney. He reserves nothing for his heirs and assigns, nor does the agreement recited amount to a covenant running with the land; though it was binding upon Hicks and Whitney, *non constant* that it binds their grantees, Chase and Dix. At any rate, it was entirely competent and lawful for Whitney's grantees to make any arrangement they pleased in regard to the water while owners, or in re-

gard to the manner of conducting it from the spring.    When these parol licenses given by Aldrich and Hicks, had been acted upon by Terrill, they became obligatory upon him at least.    After that time, none of these parties could alone restore the old status. Chase, as the grantor of Terrill, is bound by his acts as owner, so far at least as Hicks and his grantees are concerned.    Hence, Chase cannot now stand upon Whitney's right, only as limited and burdened by such changes as his grantor, Terrill, while owner, engrafted upon that right.    If Hicks was the owner of the spring, he had a right to all the water, except so much as was reasonably sufficient to supply Whitney's barn, and the Knapp and Higby house, drawn in the manner used at the date of the deed.    Hicks and his grantee Dix, have the right to take at the new house, as much water as ran to the old barn at least.    If Whitney, when he deeded to Hicks, took water at the Higby and Knapp house, through a pipe so gauged or plugged that the free course of the water through the branch pipe to the old barn, was not obstructed, or what is perhaps the same in effect, if he drew from a faucet, then Chase must draw in the same manner.

The objection that the orator takes to the admission of the defendant's testimony, is not well founded.    The master finds that a list of witnesses was furnished to the orator before the defendant began to take his testimony.  · That is a compliance with rule 16, as it has been understood and practiced under for the last half century in this county.  ·

The opinion of the court was delivered by

Ross, J.    On the 22d day of November, 1858, when Lyman H. Whitney conveyed the premises owned by the defendant to Warren J. Hicks, he was the sole owner of the well of water, and of all the premises to which the water from the well flowed, excepting the orator's premises, which he had conveyed three days prior thereto, at which time the water from the well was running to and supplying them.    Being thus situated, Whitney had the right in his conveyance to Hicks, to make such a reservation in regard to the water flowing from the well, as he saw fit.    The main pipe then conveyed the water, first to said Whitney's barn

on his homestead; thence to the orator's premises; and thence the surplus water flowed to the old house standing on the lot which he that day conveyed to Warren J. Hicks. There was also then a pipe branching from the main pipe, on the lot he conveyed to Hicks, which conveyed a small portion of the water to an old barn standing on the lot conveyed, but the water had never been used at said barn to any great extent, and only during a small part of the year. With the acqueduct thus laid, Whitney conveyed the lot on which the well was situated, with the following reservation: " Reserving only the right now occupied by me, of drawing the water from the well on said land, and of digging to repair or relay water-pipes from said well,—it being mutually agreed and understood, that the water shall never be diverted from its present channel, but shall first pass to the barn of said Whitney on his homestead, and thence to the dwelling of Franklin Knapp and George E. Higby, and thence across the road to the dwelling on the lot above deeded, where the surplus water shall be freely suffered to run." The right then occupied by said Whitney, was the right to draw all the water from said well. The language used is, "the water from the well," and not a part of the water. To make it more certain, it is repeated in the next clause, "the water "—not a part of the water—" shall never be diverted from its present channel," &c, but shall pass on, " and thence across the road to the dwelling on the lot above deeded, where the surplus water shall be freely suffered to run." By surplus water, must be understood what was left over of the whole quantity of water flowing from the well after supplying the two places first named. From this language, so often repeated, if Whitney did not reserve the right to draw all the water flowing from the well, it would be difficult' to use language which would create such a reservation. We think he did reserve the right to draw through the aqueduct to the barn of said Whitney on his homestead, all the water flowing from the well, where he had the right to use so much of the water as he was then using and accustomed to use; that what remained, was to pass to the premises of Knapp and Higby, where so much of the water could be used, as was then used and accustomed to be used, and the rest

was to pass as surplus water, to the house on the premises then conveyed. The branch pipe was wholly on the premises conveyed, and was conveyed with the premises, and not as an appurtenance to them. When the grantor reserved from the operation of that deed, the water flowing from the well, he reserved what was flowing through the branch pipe, as well as what flowed through the main pipe below the branch pipe. If Whitney ceased to use the water at the barn on his homestead, it would go to increase the surplus. We do not think he could convey the right to any one to draw the same quantity at some other place. The water was to run in the then channel, and when it passed the barn on the homestead, it became a part of the surplus, if it was not necessary to supply the Knapp and Higby premises, as they were then supplied. We do not find anything in the testimony that varies the rights of the orator and defendant in the water flowing from the spring, from what they were as fixed by the reservation in said deed to Warren and J. Hicks. As the surplus was to be returned to the premises, the defendant has the right to use that surplus as he chooses and when he chooses. The arrangement between Terrill, Aldrich, and Hicks, by which the course of aqueduct was changed somewhat, we do not think was intended to or did vary the rights of the various parties to the water flowing from the well. We do not think the defendant has any right to the water till it becomes surplus water, by remaining after having passed and supplied the barn on the homestead, and the orator's premises, as they were supplied at the date of the conveyance. This surplus the defendant has the right to, and the orator is bound to furnish him reasonable facilities to convey it from his house, and is also bound to so use the water at his premises, that the surplus water may pass freely to the defendant, if the defendant desires to take it. The 16th chancery rule, in regard to which the solicitors are at variance, and which we are desired to construe, we understand to mean, that each party before he commences taking the testimony on his side, shall give to the other party a full list of the names of the witnesses whose depositions he proposes to take. This is the construction which has been universally given to the rule, so far as we are aware. The defendant could never know or tell what

witnesses he should be under the necessity of using, till he knew what the orator had shown by his witnesses. The *pro forma* decree of the court of chancery is reversed, and the cause is remanded, with a mandate to enter a decree for the orator, perpetually enjoining the defendant from taking any water from said well by said branch pipe, or in any other way than as surplus water, as herein defined, after it shall have reached the premises of the orator. From the fact that the orator has burdened the case with needless testimony, we allow to the orator only two thirds of the entire expense of his testimony, including witness, master, and solicitor fees, and fees for copies of the testimony. We should have made a larger reduction in these expenses, if the defendant had not followed in this respect the bad example set him by the orator.